POLLOCK v. McCARTY.

1. DEEDS—LIFE ESTATES—ESCROWS—INTENT.
   Where a contract for a lease for the lifetime of the lessor, containing a provision for a deed thereafter, was made, and a warranty deed was delivered in escrow to a third person, to take effect at the death of the lessor, *held*, that it was the lessor's intention, that if the lessees performed the contract and survived her, they should, upon her death, have the fee of the land, she, in the meanwhile, to own and control the property herself and retain all interest therein except a determinable leasehold.

2. SAME—DELIVERY—TIME OF TAKING EFFECT.
   The test of a conveyance is whether it can be said that

the delivery of the deed is such as to convey a present interest in land.

3. SAME.

One of the essential requisites to the validity of a deed, so as to pass title, is delivery.

4. SAME.

The act of delivery of a deed is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is that act of the grantor, indicated either by acts or words, or both, which shows an intention on his part to perfect the transaction, by a surrender of the instrument to the grantee, or to some third person for his use and benefit.[1]

Appeal from Barry; Smith, J. Submitted April 10, 1917. (Docket No. 114.) Decided September 27, 1917.

Bill by James W. Pollock and others against Alonzo McCarty and others to set aside a deed. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*Colgrove & Potter,* for plaintiffs.

*Thomas Sullivan,* for defendants.

OSTRANDER, J. The opinion of the learned trial judge so completely and briefly states the facts that I adopt it:

"The plaintiffs in this case are the nephews of Catherine Rouse, and file this bill as her sole and only heirs at law to set aside a deed made on the 27th day of November, 1901, to Alonzo McCarty, conveying to him the east half of the northeast quarter of the southwest quarter, and the east 30 acres of the southwest quarter of the northwest quarter, all on section 33, township 3 north, range 9 west, Barry county, Mich.,

---

[1] For a discussion of the question as to whether delivery of deed to third person or for record by grantor, is a delivery to the grantee, see notes in 54 L. R. A. 865; 9 L. R. A. (N. S.) 224; 38 L. R. A. (N. S.) 941.

As to delivery of deed to third persons to be delivered to grantee after grantor's death upon performance of conditions by grantor, see note in 9 L. R. A. (N. S.) 317.

containing 50 acres of land, more or less, according to the United States survey.

"The bill alleges that the said Catherine Rouse at the date of said conveyance was aged, infirm, and mentally incompetent to transact business, and that she was easily influenced, and that the defendant practiced upon her fraud and deceit and procured the said deed by unduly influencing her to make the same, and that it was without consideration, was never delivered, and was testamentary in its character, and should be set aside. The answer denies that she was incompetent or that she was unduly influenced to make said deed, and claims that it was an honest transaction, and that the deed should stand.

"Proofs were taken in the case on the part of the plaintiffs, but there was no evidence offered to show the mental incompetency of Catherine Rouse, or that she had been influenced to make such a deed by fraudulent practices and deceit. Plaintiffs rest their case wholly on proof of the contract which accompanied the said deed and the proof that she had later been by the probate court of Barry county adjudged incompetent, and a guardian had been appointed for her, and that later she had been adjudged insane by the said court and committed to the asylum for the insane at Kalamazoo, Mich.

"I think it will be well here to state first that the deed was made November 27, 1901; that a guardian was appointed for said Catherine Rouse October 15, 1910; that she was admitted to the asylum for the insane at Kalamazoo, July 25, 1911, and that she died at the asylum January 27, 1915.

"After the plaintiffs introduced the contract and the probate files showing the appointment of a guardian and her commitment to the asylum and her death, they rested their case, and the defense also rested, so that the foregoing is substantially all the proof that was introduced at the hearing.

"It is the plaintiffs' contention that the deed in question was without consideration, or at least without adequate consideration; that it was testamentary in its character; and that it was never delivered; and that no title passed to the defendants in the case, the deed being wholly inoperative.

"The contract in this case is as follows:

" 'It is hereby agreed, between Catherine Rouse, of the city of Hastings, county of Barry, and State of Michigan, party of the first part, and Alonzo McCarty and Loammi McCarty, of the township of Rutland, in said county and state, parties of the second part, as follows: The said party of the first part, in consideration of the rents and covenants herein specified, does hereby let and lease to the said parties of the second part the following described premises, situated and being in the township of Rutland, county of Barry, and State of Michigan, to wit: The east half of the northwest quarter of the southwest quarter, and the east 30 acres of the southwest quarter of the northwest quarter, all in section 33, town 3 north, range 9 west, containing 50 acres of land, more or less, according to the United States survey thereof, for the term of the life of the said first party from and after the 27th day of November, 1901, on the terms and conditions hereinafter mentioned, to be occupied for farming purposes: *Provided,* that in case any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said party of the first part, her certain attorneys, heirs, representatives, and assigns, to re-enter into, repossess the said premises, and the said parties of the second part, and each and every other occupant, to remove and put out.

" 'And the said parties of the second part do hereby hire the said premises for the term of  *  *  *  as above mentioned, and does covenant and promise to pay to the said party of the first part, her representatives and assigns, for rent of said premises for said term, the sum of fifty dollars each year, payable as follows: Twenty-five dollars on April 1st and twenty-five dollars on November 1st of each year. It is agreed that this contract expires with the death of first party, and the second party, Alonzo McCarty, receives a deed of said premises; that said deed is made and executed and is now held by A. E. Kenaston, and the same is to be delivered to said Alonzo McCarty upon the termination of this lease in case the terms of the contract have not been violated. It is agreed that said second parties must pay fifty dollars and furnish first party three bushels of potatoes and one bushel of sweet apples on each and every year, and shall also pay the taxes, and said contract shall not be considered violated if said payments shall be made within thirty days after they become due. If said contract shall not be fulfilled, said premises shall revert back to said first party and said A. E. Kenaston is hereby directed to deliver up said deed to first party; it being understood and

agreed that if this contract is complied with said property shall become the property of said Alonzo McCarty.

"'Said parties of the second part further covenant that they will not assign nor transfer this lease, or any part thereof, without the written assent of said party of the first part; and also that said parties of the second part will at their own expense, during the continuance of this lease, keep the said premises and every part thereof in as good repair, and at the expiration of the term the same shall be fulfilled as before set forth.

"'And the said party of the first part does covenant that the said parties of the second part, on paying the aforesaid installments and performing all the covenants aforesaid, shall and may peacefully and quietly have, hold, and enjoy the said demised premises for the term aforesaid.

"'The covenants, conditions, and agreements made and entered into by the several parties hereto are declared binding on their respective heirs, representatives, and assigns.

"'Witness our hands and seals this 27th day of November, 1901.

"'CATHERINE ROUSE. [L. S.]

"'ALONZO McCARTY. [L. S.]

"'LOAMMI McCARTY. [L. S.]

"'Signed, sealed, and delivered in presence of:

"'_____.

"'_____.'

"This contract has the following indorsements:

| | | |
|---|---|---|
| "'Paid $25 | ............................ | March 25, 1902 |
| Paid 25 | ........................ | Nov. 30, 1904, |
| | | in full to date |
| Paid 25 | ............................ | Apr.    , 1905 |
| Paid 25 | ............................ | Nov. 2, 1905 |
| Paid 25 | ............................ | Apr. 6, 1906 |
| Paid 25 | ............................ | Nov. 17, 1906 |
| Paid 25 | ............................ | Apr.    , 1907 |
| Paid 25 | ............................ | Nov. 15, 1907 |
| Paid 25 | ............................ | Apr. 21, 1908 |
| Paid 25 | ............................ | Dec. 5, 1908 |
| Paid 25 | ............................ | Mar. 24, 1909 |
| Paid 25 | ............................ | Dec. 13, 1909 |
| Paid 25 | ............................ | Apr. 8, 1910 |
| Paid 25 | ............................ | Nov. 7, 1910 |
| Paid 25 | ............................ | Apr. 7, 1911 |
| Paid 25 | ............................ | Nov. 28, 1911 |

Paid $25 ..............................Apr. 12, 1912
Paid  25 ..............................Dec. 19, 1912
Paid  25 ..............................Mar. 24, 1913
Paid  25 ..............................Nov. 19, 1913
Paid  25 ..............................Apr. 18, 1914
Paid  25 ..............................Nov. 23, 1914'

"The deed in the case is an ordinary warranty deed, duly executed before Alonzo E. Kenaston, notary public, properly witnessed, and need not be set forth. This deed and the lease were left with Mr. Kenaston, who placed them in an envelope and indorsed on said envelope the following:

" 'Deed from Catharine Rouse to Alonzo McCarty to be delivered at death of Mrs. Rouse. Also lease deposited herein containing conditions upon which deed is made. 11—27—01.'

"The proofs show that Alonzo E. Kenaston died several years ago and preceding the death of Catherine Rouse, and that these papers, the deed and contract and envelope in which they were deposited were turned over to A. A. Anderson, who was appointed administrator of his estate.

"The proof shows that the terms of the contract were fully carried out by said Alonzo McCarty.

"The proof also shows that Loammi McCarty died on the 10th day of January, 1909."

The court was of opinion that the only question in the case is whether the deed was delivered, answering the question in this way:

"I have given this case very careful consideration, have made personal investigation of the cases cited by counsel for the respective parties in their very exhaustive briefs, and I am of the opinion that there was a legal delivery of the deed to the defendants by the delivery of the same to Mr. Kenaston to be held until the death of Catherine Rouse.

"It is my judgment that, the contract having been performed on the part of the defendant, that he is entitled to have this deed delivered to him."

A decree dismissing the bill was entered, and plaintiffs have appealed.

I am of opinion that the decree should be reversed, and one entered for plaintiffs in conformity with the prayer of the bill. I have no doubt that Catherine Rouse intended that the McCartys, if they performed their contract and survived her, should, upon her death, have the fee of the land. She intended meanwhile to own and control the property herself, to retain all interest therein except the determinable leasehold interest which she created. Her provision was for her purpose inadequate, because her intention could be given effect only by a devise of the land. There is no idea here of a sale and purchase of land, nor any of the transfer of a present interest in the land, with deferred enjoyment thereof. The lease is itself conclusive evidence of this intention. It is inconsistent with the idea that any interest in the land passed presently from the grantor to the grantee, except the leasehold interest. The lease, the deed, and the delivery of the deed are to be considered in arriving at the owner's intention.

The test is whether it can be said that delivery of the deed was such as to convey a present interest in the land. *Culy* v. *Upham,* 135 Mich. 131 (97 N. W. 405, 106 Am. St. Rep. 388) ; *Felt* v. *Felt,* 155 Mich. 237 (118 N. W. 953) ; *Cooper* v. *Cooper,* 162 Mich. 304 (127 N. W. 266) ; *Taft* v. *Taft,* 59 Mich. 185 (26 N. W. 426, 60 Am. St. Rep. 291) ; *Loomis* v. *Loomis,* 178 Mich. 221 (144 N. W. 552) ; *Reed* v. *Brown,* 184 Mich. 515 (151 N. W. 592).

"One of the essential requisites to the validity of a deed, so as to pass the title, is delivery. Even although in all other respects it has been properly executed, yet it does not follow that the title to the property passes; the grantor yet retains control of the instrument, and may deliver it, absolutely, conditionally, or not at all. The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee and an acceptance by him, but it is

that act of the grantor, indicated either by acts or words or both, which shows an intention on his part to perfect the transaction, by a surrender of the instrument to the grantee, or to some third person for his use and benefit. The whole object of a delivery is to indicate an intent upon the part of the grantor to give effect to the instrument." *Thatcher* v. *St. Andrew's Church,* 37 Mich. 264, 268, 269.

Decree reversed, and decree here for plaintiffs.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.